## (May 6, 1982)

■ MINISTER, ELDERS AND DEACONS OF THE REFORMED PROTESTANT DUTCH CHURCH OF THE CITY OF NEW YORK, Respondent, v 198 BROADWAY, INC., et al., Respondents, and HENRY MODELL AND CO., INC., Appellant. — Order, Supreme Court, Appellate Term, entered May 21, 1981, reversing the order of the Civil Court, New York County (Ribaudo, J.), dated January 12, 1981, and granting petitioner landlord summary judgment in its holdover proceeding to terminate the tenancy of undertenant respondent Henry Modell and Co., Inc. while denying Modell's cross motion for summary judgment, affirmed, with costs. The facts are fairly stated in the dissenting opinion. Affirmance is warranted for the reasons stated by the Appellate Term. However, in the light of the dissent, further comment is appropriate. There is no merit to respondent's contention that the sole purpose of preserving the overlandlord, the greater estate, and the underlandlord, the lesser estate, was to interfere with respondent's contractual rights. As the Appellate Term held, the fact that both corporations are owned by the same parties or that one owns the other does not bring about a merger. 198 Broadway, Inc. acquired the master lease as assignee in December, 1965. At that time Modell had been a long-time tenant as sublessee of 198 Broadway, Inc.'s assignor. The church, overlandlord, did not acquire the title and fee to the entire premises until February, 1966. Thus, at the time the church became the overlandlord, 198 Broadway, Inc. was already the lessee on the master lease and the sublessor on the sublease to Modell. Paragraph 52 of the sublease, which grants the option to Modell, requires that its exercise be at least one year prior to the expiration of the sublease. The counterpart in the overlease requires six months' notice. The fact that the latter notice period is shorter creates no implication that it was obligatory on the underlandlord to exercise its option once the undertenant exercised the option granted to it. If this was the purpose of the parties, it would have been easy to spell out the obligation in the lease and the sublease. Paragraph 53 of the sublease makes clear the status of 198 Broadway, Inc. as a lessee of the land and building and that the sublease is subject to the terms, covenants and conditions of the major lease, which contains the option provision exercisable by the major tenant. To require the underlandlord to exercise its option is to impose an obligation upon it which it never undertook. There is no covenant to exercise the option, either express or by implication. To spell out an implied obligation is to rewrite the lease between the parties. Paragraph 51 of the master lease grants 198 Broadway, Inc. an absolute, unfettered right to renew or not to renew. No limitation appears in the master lease or in the sublease. Accordingly, the termination of the master lease extinguished

Modell's right to renew the sublease (*Loudave Estates v Cross Rds. Improvement Co.*, 28 Misc 2d 54, affd without opn 20 AD2d 864). The option was dependent upon the continued existence of the master lease and did not constitute a property interest subject to forfeiture. "As between the lessee and his sublessee, the lessee ordinarily has the right of renewal of the major lease and the sublessee's right to renewal of his sublease is conditioned on the lessee's obtaining a renewal of the major lease, in which event the sublessee acquires no right unless the lessee obtains such renewal." (*Loudave Estates v Cross Rds. Improvement Co.*, 28 Misc 2d, *supra*, at p 55.) There was no reason to expect that the option to renew was automatically exercisable, regardless of whether or not 198 Broadway, Inc. chose to renew its lease with the church (*J.N.A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392). In that case, relied on by the dissent, the issue was whether a belated exercise of the option worked a forfeiture. This has nothing to do with our case, where the option in issue is plainly made dependent upon the exercise of the option in the overlease. This is further demonstrated by the "No Disturbance" letter dated March 22, 1960, signed after execution of the sublease pursuant to which Modell as sublessee was authorized to compel the landlord to honor the terms of the sublease in the event of default by the then tenant. In that letter, the overlandlord agreed to recognize the sublease if the tenant defaulted under the terms of the master lease. The letter did not give sublessee Modell the right to renew the term of the sublease if the option in the master lease was not exercised. This would surely have been appropriate to recite if it had been the intention of the parties. Finally, we note that the space held by Modell was for a store and basement constituting only a portion of the twelve-story premises. In the absence of a clear contractual right, the sublessee should not be permitted to compel renewal by the sublessor of the overlease of the whole premises, the result here sought. Concur — Murphy, P. J., Markewich and Fein, JJ.

Milonas, J., dissents in a memorandum as follows: I would reverse and remand for further proceedings. This is an appeal from an order of the Supreme Court, Appellate Term, entered May 21, 1981, reversing an order of the Civil Court, New York County (Ribaudo, J.), dated January 12, 1981, which granted the landlord summary judgment on its holdover proceedings and denied appellant Modell's cross motion for summary judgment. For approximately 40 years, appellant Henry Modell & Company, Inc. ("Modell") had been the tenant of a portion of the space in premises located at 198 Broadway. In January of 1959, one of the owners of the property sold his fee interest to the other owners and received a master lease subject to existing tenancies, including Modell's. Modell, in turn, agreed to exchange its direct lease for a sublease and to pay a greatly increased rent (from $9,600 to $25,000 per year). As part of the new agreement, Modell was given an option for an additional term of 21 years, ending January 15, 1980, and two further 21-year renewal terms, provisions which coincided with those contained within the master lease. However, in December of 1965, 198 Broadway, Inc., a wholly owned subsidiary of petitioner-respondent, Reformed Protestant Dutch Church ("Church"), acquired the master lease. Shortly thereafter, the Church purchased the building. When Modell, in November of 1978, attempted to exercise the first of its renewal options, it was informed that it could not do so. Since 198 Broadway had not invoked its own option to renew, and Modell's renewal rights being subject to that of the master lease, the sublease would, according to the Church, terminate at the expiration date of the master lease. Petitioner thus commenced a holdover proceeding. The trial court, finding material issues of fact and meritorious defenses, declined to grant summary judgment and directed that discovery take place and that the matter be set for trial. The

Appellate Term reversed and ordered summary judgment in favor of the Church on the ground that Modell's right to renew was conditioned on renewal by 198 Broadway of its master lease. In my opinion, this was error in that there exist questions of fact which render summary judgment inappropriate. In *J.N.A. Realty Corp. v Cross Bay Chelsea* (42 NY2d 392), the Court of Appeals held that while the loss of an option to renew does not ordinarily result in the forfeiture of any vested rights, there are circumstances where a tenant might indeed suffer forfeiture. In such situations, equity will intervene to relieve against the forfeiture. It is insufficient simply to declare that Modell's rights were entirely dependent on the actions of 198 Broadway and that no forfeiture was involved where, as is the case here, respondent has made allegations which, if true, may justify that equity be applied. Modell states that the reason it was willing to relinquish its direct lease in the first place and become a sublessor, and in the process pay a significantly higher rental, was in order to obtain the renewal options. Respondent further claims that the fee owner wrongfully directed its wholly owned subsidiary to breach its sublease by not renewing the master lease and that this was done despite the economic detriment to 198 Broadway. Modell also contends that, in reality, 198 Broadway was not a separate, corporate entity as evidenced by the fact that the Church and 198 Broadway, for example, interchangeably billed Modell for rent and interchangeably deposited Modell's checks, and that the master lease merged with the fee and Modell thereby became the direct tenant (see *Curtis v Moore,* 152 NY 159). Although the Appellate Term considered this argument only to reject it, respondent was never provided with the opportunity to prove the validity of its contentions. Certainly Modell has raised sufficient issues of fact to require further proceedings.